IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs July 8, 2020

**STATE OF TENNESSEE v. GARY THOMAS RUSSELL**

**Appeal from the Circuit Court for Madison County**
No. 19-409      Donald H. Allen, Judge

**No. W2019-01874-CCA-R3-CD**

A jury convicted the Defendant, Gary Thomas Russell, of violating the sex offender residential restrictions and acquitted him of harboring a runaway child. The trial court sentenced the Defendant to six years. On appeal, the Defendant contends that the evidence is insufficient to sustain his conviction because he was not "alone with a minor" as defined by Tennessee Code Annotated section 40-39-211(k)(2). After review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS, P.J., and J. ROSS DYER, J., joined.

George Morton, District Public Defender; Gregory D. Gookin, Assistant Public Defender, Jackson, Tennessee, for the appellant, Gary Thomas Russell.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry and Andrew Craig Coulam, Assistant Attorneys General; Jody S. Pickens, District Attorney General; and Matthew Floyd, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Facts and Background**

This case arises from a report that the Defendant, a registered sex offender, was in the company of a runaway fifteen-year-old girl, K.G.[1] As a result of the police investigation of this report, a Madison County grand jury indicted the Defendant for one

---

[1] For her privacy, we will refer to K.G. by her initials only.

count of violating the sex offender residential restrictions, one count of harboring a runaway child, two counts of possessing a controlled substance, and one count of possessing drug paraphernalia. On May 6, 2019, the Defendant pleaded guilty to two counts of possessing a controlled substance and one count of possessing drug paraphernalia, and the trial court sentenced him to an effective sentence of eleven months and twenty-nine days. The following day, the Defendant proceeded to trial on the remaining charges: violating the residential restrictions of the sex offender registry and harboring a runaway child.

At the Defendant's trial, the parties presented the following evidence: Deputy Tony Stewart, with the Madison County Sheriff's Department, testified that on July 11, 2018, he was dispatched to a trailer on Steam Mill Ferry Road in response to a call about a possible runaway juvenile, K.G., who was fifteen or sixteen years old. When he arrived, he noticed the Defendant standing in the doorway of the trailer, and he advised the Defendant that he was there in reference to a runaway juvenile. Deputy Stewart asked the Defendant if there were any juvenile females at his residence, and the Defendant said that there were not. The deputy asked the Defendant to walk him through the residence, so that the deputy could ensure the Defendant's statement was accurate. The Defendant then admitted that there was a juvenile in the home.

Deputy Stewart testified that, when he entered the home, he made contact with K.G., who was the only other person in the home. The deputy placed K.G. in his patrol vehicle and checked with dispatch for any outstanding warrants associated with the Defendant. Dispatch informed the deputy that, while the Defendant did not have any outstanding warrants, he was an "active sex offender." Law enforcement officers took K.G. to a juvenile detention facility and took the Defendant into custody.

During cross-examination, Deputy Stewart testified that his notes indicated that the Defendant told him that the juvenile had been dropped off at the trailer and that he was waiting for his niece to come and get the juvenile. The Defendant also told the deputy that the juvenile was in his home hiding from law enforcement. The deputy said that these events occurred at around 10:35 p.m. The deputy agreed that, when he made contact with K.G., she was fully clothed and standing in a bedroom.

Katrina Singleton, the compliance officer of the sex offender registry for the Madison County Sheriff's Department, testified that she knew the Defendant because he was on the sex offender registry for Madison County. She said that the Defendant had pleaded guilty to aggravated sexual battery on January 24, 1996. As a result of that conviction, the Defendant was required to register with the Tennessee Sex Offender Registry as a violent sexual offender. The Defendant, who reported quarterly, came under her supervision in June of 2018. Officer Singleton testified that the Defendant had

been informed and acknowledged understanding that he could not be alone in a private area with a minor.

During cross-examination, Officer Singleton said that she had conducted home checks while supervising the Defendant and that the Defendant had reported as required. He had also paid his yearly supervising fee.

After the close of the State's case in chief, the Defendant called Tammie Robertson, who testified that K.G. was a foster child in her home. K.G. had transferred out of her home before she was reported as a runaway. Ms. Robertson said that a friend of K.G.'s named R.C.[2] called her and informed her where K.G. might have fled when she ran away. Ms. Robertson notified the Sheriff's Department. Ms. Robertson said that R.C. was related to the Defendant.

Ms. Robertson explained that K.G. called R.C. to inform her that she needed help and to ask her to come and pick her up. R.C. said that she could not pick her up immediately but that K.G. could go to R.C.'s uncle's house and wait for her there. The Defendant was R.C.'s uncle.

During cross-examination, Ms. Robertson testified that she did not know at the time of these events that the Defendant was a registered sex offender.

R.C. testified that the Defendant was her uncle because her grandmother was the Defendant's sister. R.C. said that she met K.G. when the two attended the same high school. She knew Ms. Robertson as K.G.'s foster mother. K.G. contacted R.C. through Instagram and said that she needed a place to go and asked R.C. to come get her. K.G. told R.C. where she was located, and R.C. told K.G. that her uncle, the Defendant, lived close by. R.C. told K.G. that she did not think that the Defendant would mind if K.G. waited at his residence for R.C. to arrive. R.C. said that she tried to call the Defendant to ask permission but that the Defendant's phone was broken, so he did not answer.

R.C. testified that, shortly thereafter, she received a call from a "girl" who said that she had dropped K.G. off at the Defendant's house. The girl told R.C. that K.G. had run away from foster care. R.C. expressed frustration that the girl had taken K.G. to the Defendant's house if she was a runaway. R.C. said that she then called Ms. Robertson and told her what had happened. R.C. said that she did not know the Defendant was on the sex offender registry and that she was just trying to help her friend.

R.C. agreed that she had just turned fifteen at the time of this event and that

---

[2] R.C. is also a minor, so we will refer to her by her initials.

anyone who had introduced themselves as her friend was likely a minor.

Based upon this evidence, the jury convicted the Defendant of violating the sex offender residential restrictions but found him not guilty of harboring a runaway. The trial court sentenced the Defendant to six years in the Tennessee Department of Correction, to be served concurrently with the sentences for his drug offense convictions. It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that the evidence is insufficient to sustain his conviction for violating the sex offender residential restrictions because he was engaged in lawful conduct and the presence of the juvenile was incidental, accidental, or otherwise unrelated to his lawful conduct. The State counters that the evidence presented at trial is sufficient to support the jury's verdict. We agree with the State.

When an accused challenges the sufficiency of the evidence, this court's standard of review is whether, after considering the evidence in the light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citing *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)). "Questions concerning the credibility of

witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963)). This court must afford the State of Tennessee the "'strongest legitimate view of the evidence'" contained in the record, as well as "'all reasonable and legitimate inferences'" that may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000) (citations omitted).

Tennessee Code Annotated section 40-39-211(k)(2) (2019) states that "unless otherwise permitted by subsection (c), while mandated to comply with the requirements of this part, no sexual offender, as defensed in § 40-39-202, or violent sexual offender, as defined in § 40-39-202, shall be alone with a minor or minors in a private area." Subsection (c) does not apply to the facts of this case, and the Defendant is a violent sexual offender.

The Code goes on to state: "(A)(i) "Alone with" means one (1) or more offenders covered by this subsection (k) is in the presence of a minor or minors in a private area; and . . . (a) There is no other adult present in the area . . . ." T.C.A. § 40-39-211(k)(1)(A)(i). Further:

> (ii) If the offender is in a private area where the offender has the right to be, the offender is not "alone with" a minor or minors if the offender is engaged in an otherwise lawful activity and the presence of the minor or minors is incidental, accidental, or otherwise unrelated to the

offender's lawful activity;

        (B)(i) "Private area" means in or on any real or personal property, regardless of ownership, where the conduct of the offender is not readily observable by anyone but the minor or minors alone with the offender;

T.C.A. §40-39-211(k)(1)(B)(i).

We conclude that the evidence presented, viewed in the light most favorable to the State, supports the Defendant's conviction. The Defendant was in the doorway of his home when Deputy Stewart arrived. The Defendant told the deputy that there was not a juvenile in his home. When Deputy Stewart asked to see inside, the Defendant told him that there was, in fact, a juvenile female located in the home. When the deputy went inside the trailer, he saw K.G., a juvenile, in a bedroom of the home. This evidence supports the jury's finding that the Defendant was in a private area with a juvenile.

The Defendant contends that he was lawfully present at his house and that K.G.'s presence was incidental or accidental. We do not agree. There was no evidence that K.G. happened to be at the house or that the Defendant did not permit her entry. The Defendant's own witness, R.C., testified that she told K.G. to tell the Defendant that R.C. had sent her. She also said that the Defendant would likely assume that K.G. was close to R.C.'s age, which was fifteen. K.G. presumably went to the Defendant's residence, introduced herself, and the Defendant let her inside. The Defendant knew that he was not allowed to be alone with a minor in a private area. The Defendant made the choice to allow the minor to come into his home. We conclude that the evidence is sufficient to sustain the Defendant's conviction.

### III. Conclusion

After a review of the record and the applicable law, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE

6